IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| STATE OF IDAHO, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,<br><br>*Defendants*,<br><br>NEZ PERCE TRIBE, *et al.*,<br><br>*Defendant-Intervenors*,<br><br>UTE INDIAN TRIBE OF THE UINTAH AND OURAY RESERVATIONS,<br><br>*Defendant-Intervenors*. | No. 1:24-cv-00100<br><br>Hon. Daniel L. Hovland |

**NOTICE OF WITHDRAWAL OF PRIOR FILINGS**

The United States on behalf of Defendants the United States Environmental Protection Agency and Administrator Lee Zeldin (collectively, EPA) respectfully notifies the Court that the United States withdraws its motion for summary judgment, its opposition to Plaintiffs' motion for summary judgment, and its opposition to Plaintiffs' motion for preliminary injunction (Doc. Nos. 18, 71, 72). As explained in more detail below, the United States now agrees that the challenged agency action is unlawful.

**INTRODUCTION**

In an alarming regulatory overreach, EPA issued a rule in May 2024 requiring States to consider and protect broadly defined off-reservation "tribal reserved rights" in setting water quality standards under the Clean Water Act (CWA). Water Quality Standards Regulatory

1

Revisions to Protect Tribal Reserved Rights, 89 Fed. Reg. 35717 (May 2, 2024) (2024 Rule). This regulatory revision is the first and only instance in which EPA explicitly required States to look outside the scope of the CWA's requirements for substantive considerations in developing their water quality standards. If this were what Congress required, then this Administration would dutifully carry it out. But it is not. Congress left development of water quality standards to the States in the first instance. The 2024 Rule grossly exceeds EPA's statutory authority to review State standards. Section 303(c) of the Clean Water Act, which EPA relied on in its most recent attempt to find authority for a tribal rights regulation, says nothing about tribal reserved rights, and nothing in the Act requires States to consider or protect "express or implied" reserved rights to water resources or authorizes EPA to require States to do so. Of course, EPA does other significant work to help tribes, and State can always voluntarily consider and protect tribal interests if they elect to do so. But the Clean Water Act does not authorize EPA to require it.

EPA thus agrees with the State plaintiffs in this case, who challenge the 2024 Rule as unlawful under the Administrative Procedure Act and ask this Court to vacate it. Upon review of the statute, the Rule, and the issues presented in the litigation, the United States now agrees that EPA lacked statutory authority under the Clean Water Act. The United States therefore withdraws its motion for summary judgment and its opposition to Plaintiffs' motion for summary judgment and to Plaintiffs' motion for preliminary injunction, and does not oppose Plaintiffs' request that the Court vacate the 2024 Rule.

## BACKGROUND

### A. Statutory Background

Congress enacted the CWA "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters," 33 U.S.C. § 1251(a), while simultaneously "recogniz[ing], preserv[ing], and protect[ing] the primary responsibilities and rights of States …

to plan the development and use (including restoration, preservation, and enhancement) of … water resources." 33 U.S.C. § 1251(b).  In accordance with the cooperative federalism structure of the Act, CWA section 303(c) gives states the primary responsibility for reviewing, establishing, and revising water quality standards applicable to their waters.  33 U.S.C. § 1313(c).  States are required to hold a public hearing at least once every three years to review applicable standards and, if appropriate, revise or adopt new standards.  *Id.* at § 1313(c)(1).  Any new or revised water quality standards must be submitted to EPA for review and approval or disapproval.  *Id.*  CWA section 303(c) provides that water quality standards "shall consist of the designated uses of the navigable waters involved and the water quality criteria for such waters based upon such uses."  *Id.* at § 1313(c)(2)(A).  The CWA requires that, in establishing designated uses, states "tak[e] into consideration [a water's] use and value for public water supplies, propagation of fish and wildlife, recreational purposes, and agricultural, industrial, and other purposes," and also "tak[e] into consideration their use and value for navigation."  *Id.*

Section 303(c) provides that if EPA determines that a state's new or revised standards "meets the requirements of *this chapter*, such standard shall thereafter be the water quality standard for the applicable waters of that State."  *Id.* § 1313(c)(3) (emphasis added).  If EPA determines that the state's new or revised standards are not consistent with the requirements of the CWA and specifies changes to meet such requirements, the state has 90 days to submit a modified standard to the EPA.  If the state fails to submit a modified standard that meets the CWA's requirements, then the EPA must propose and promulgate new or revised Federal water quality standards for the waters involved.  *Id.* at § 1313(c)(3), 1313(c)(4)(B).

Congress specifically addressed the role of Tribes in the CWA standards-setting process in CWA section 518(e).  33 U.S.C. § 1377.  That provision authorizes EPA to approve federally

3

recognized Tribes that meet enumerated eligibility requirements to administer certain CWA programs, including section 303(c). *Id.* Tribes are eligible for "treatment as a State" if, among other things, they have "a governing body carrying out substantial governmental duties and powers;" the functions they will exercise "pertain to the management and protection of water resources" that are within reservation borders or meet other specified conditions; and they are "reasonably expected to be capable" of carrying out those functions consistent with the CWA. *Id.* § 1377(e). To implement that authority, Congress directed EPA to promulgate regulations governing its approval of Tribes to administer CWA programs as well as regulations establishing a dispute resolution process to "provide a mechanism for the resolution of any unreasonable consequences that may arise as a result of differing water quality standards that may be set by States and Indian tribes located on common bodies of water." *Id.*; *see also* 40 C.F.R. §§ 131.7, 131.8.

Congress did not, however, say anything about tribes or tribal treaties in section 303(c), where it specified the interests states must consider when setting water quality standards. 33 U.S.C. § 1313(c)(2)(A).

    **B.**    **Regulatory Background**

EPA first issued regulations implementing CWA section 303 in 1983. *See* 48 Fed. Reg. 51400, 51412 (Nov. 8, 1983). The bulk of EPA's implementing regulations, found at 40 C.F.R. Part 131, have remained largely the same since that time. Prior to the issuance of the challenged 2024 Rule, EPA had modified its water quality standards regulations three times. *See* 80 Fed. Reg. 51020, 51021 (Aug. 21, 2015) (summarizing regulatory history). In none of these rulemakings did EPA identify states' consideration of tribal reserved rights in water quality standards actions as a subject for regulation. However, in 2015 and in 2016, EPA rejected

several states' water quality standards because those standards allegedly failed to protect tribal reserved rights.  *See* Doc. No. 50-1 (Mem. in Support of Pl. Mot. for Summ. J.) at 3-4.  EPA withdrew those denials in 2019 and 2020, after concluding it lacked such authority *id.* at 4, but in 2022 proposed to require that state water quality standards consider and protect tribal reserved rights at "unsuppressed" levels of water-related activities.  *Id.*, citing 87 Fed. Reg. 74361, 74365 (Dec. 5, 2022).

EPA floated various theories at each step along the way, but in the final rule at issue here, EPA repudiated these other theories and relied solely on CWA section 303(c).  *Id.* at 5, citing 89 Fed. Reg. at 35723.  The 2024 Rule revised 40 C.F.R. Part 131 to add requirements applicable to water quality standards actions where federally recognized tribes assert, in writing, to states and EPA that they hold rights to aquatic or aquatic-dependent resources.

C.      **Procedural Background**

Plaintiffs filed suit in May 2024, and the next month filed a motion to stay and to enjoin the 2024 Rule.  Doc. No. 5.  The United States opposed.  Doc. No. 18.  Several Tribes were granted intervention and also opposed Plaintiffs' motion.  Doc. No. 26 (granting intervention); Doc. No. 28 (opposing preliminary injunctive relief).[1]  Plaintiffs filed their reply in support in August 2024, Doc. No. 38, and Plaintiffs' motion is pending.

Plaintiffs, the United States, and Defendant-Intervenors all moved for summary judgment.  Doc. No. 50 (Pl. Mot. for Summary Judgment); Doc. No. 71 (Defendants' Motion for Summary Judgment on the Merits); Doc. No. 75 (Tribes' Combined Cross-Motion for Summary

---

[1] The Ute Indian Tribe of the Uintah and Ouray Reservation separately moved to intervene, and its motion was also granted.  Doc. Nos. 65, 67.

Judgment and Response to Plaintiffs' Motion; Doc. No. 78 (Ute Indian Tribe's Cross-Motion for Summary Judgment and Response in Opposition to Plaintiffs' Motion for Summary Judgment).

On February 10, 2025, before the motions for summary judgment were fully briefed, the Court granted EPA's motion to hold the case in abeyance. Doc. No. 89. The Court has extended the abeyance twice since then. Doc. Nos. 94, 100.

## THE UNITED STATES' POSITION

### I.     The United States Withdraws Its Prior Filings.

After reevaluating the legal premise for the 2024 Rule, and in consideration of the Supreme Court's intervening decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the United States has concluded that EPA exceeded its CWA statutory authority by promulgating a regulatory requirement that states, in establishing water quality standards, must consider and protect express or implied reserved rights asserted by tribes. The United States therefore agrees with Plaintiffs that the 2024 Rule is unlawful. *See* Declaration of Peggy S. Browne ¶ 6 (attached as Exhibit 1).

Plaintiffs argue that EPA lacked CWA authority to issue the Rule. *See, e.g.,* Doc. No. 50-1 at 8 ("EPA's only obligation under CWA section 303(c) is to ensure that state standards are 'consistent with the applicable requirements of this chapter.' In other words, CWA section 303(c) authorizes the EPA to enforce the CWA—not federal law writ large."). Consistent with Plaintiffs' arguments, the United States agrees that that 2024 Rule goes beyond the plain language of the CWA, which does not require that states consider tribal reserved rights in establishing water quality standards. Under CWA section 303(c), states have the primary responsibility for reviewing, establishing, and revising standards applicable to their waters. 33 U.S.C. § 1313(c) *see also id.* § 1251(b) ("recogniz[ing], preserv[ing], and protect[ing] the primary responsibilities and rights of States … to plan the development and use (including

6

restoration, preservation, and enhancement) of … water resources."); *id.* § 1251(g). In reviewing a water quality standard, EPA must approve a state's submission if "such standard meets the requirements of this [Act]." *Id.* § 1313(c)(3). Nothing in CWA section 303(c) requires states to consider tribal treaty and other reserved rights in establishing water quality standards nor grants EPA authority to add requirements or considerations for state establishment of standards beyond those set forth in the statute.[2] The requirements in the 2024 Rule are therefore outside the scope of the plain language of CWA section 303(c), which does not mention tribal reserved rights.

Where Congress intended to authorize EPA to create a distinct role for Tribes in the standard-setting process, it did so expressly. In 1987, Congress amended the CWA by enacting section 518, which authorizes EPA to approve federally recognized Tribes that meet certain conditions to administer the water quality standards program and directs EPA to consult with Tribes in developing regulations to implement that section. 33 U.S.C. § 1377(e) ("[T]he Administrator shall, in consultation with Indian tribes, promulgate final regulations which specify how Indian tribes shall be treated as States for purposes of this [Act]."). Congress further directed EPA when implementing section 518 to "consult affected States sharing common water bodies and provide a mechanism for the resolution of any unreasonable consequences that may arise as a result of differing water quality standards that may be set by States and Indian tribes located on common bodies of water." Nowhere in section 303(c) did Congress direct EPA to establish a dispute resolution process regarding consideration of tribal reserved rights. Indeed,

---

[2] The 2024 Rule, in contrast, provides that "EPA must disapprove" submissions that "are not consistent with" the rule's requirements for state consideration of tribal reserved rights. 40 C.F.R. §§ 131.5(a)(9),(b); 131.9.

the 2024 Rule expressly disclaimed reliance on EPA's section 518 authority and the dispute resolution process set out in that provision.  See 89 Fed. Reg. at 35739 n.122.[3]

The 2024 Rule is also inconsistent with EPA's prior position on its authority to require states to consider tribal treaty and similar rights in establishing water quality standards.  For example, in 2019 EPA wrote separately to the Washington Department of Ecology and to the Idaho Department of Environmental Quality, noting that tribal treaties with reserved fishing rights do not allow EPA to take an action beyond its authority under the CWA.  See Browne Decl. ¶ 7.

While a state may choose to consider and protect tribal reserved rights to aquatic or aquatic-dependent resources in establishing water quality standards, EPA lacks authority to require states to do so.  The United States therefore now repudiates its argument in filings to this Court defending EPA's statutory authority to issue the 2024 Rule and withdraws the following filings, which took the position that the 2024 Rule was a valid exercise of EPA's statutory authority under the CWA:

- Doc. No. 18:  Memorandum in Opposition to Plaintiffs' Motion for Stay and Preliminary Injunction;

- Doc. No. 71:  Defendants' Motion for Summary Judgment on the Merits; and

- Doc. No. 72:  Defendants' Combined Memorandum in Support of Their Motion for Summary Judgment on the Merits and Opposition to Plaintiffs' Motion for Summary Judgment on the Merits.

---

[3] The role of federally recognized tribes under the CWA was hotly disputed at the time, and the enacted version of CWA section 518 reflected an effort to address legislators' concerns that the provision "could result in an expansion or enhancement of the substantive water rights of Indian tribes in terms of quantity or quality."  133 Cong. Rec. 1589 (1987) (statement of Sen Hatch). Proponents of the new provision confirmed that "there is nothing in the existing law nor in the proposed amendments … which in any way expands the substantive rights of an Indian tribe to a quantity or quality of water," or which confers on EPA "the power to force one State to change its approved water quality standards … to accommodate the water quality needs of another State or States."  Id.

## II.   The United States Does Not Oppose Vacatur of the 2024 Rule

Plaintiffs seek vacatur of the 2024 Rule, and the United States does not oppose that relief. *See* Doc. No. 50-1 at 40 ("vacatur is the typical and appropriate remedy under the APA for unlawful agency action").

The APA provides that "[t]he reviewing court shall … hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations[.]" 5 U.S.C. § 706(2)(C). The United States notes its general position that "set aside" under the APA refers to party-specific relief, and not vacatur of the rule as a whole.

But the United States also acknowledges binding Eighth Circuit precedent holding that vacatur is "the default remedy" in "an Administrative Procedure Act challenge." *Missouri v. Trump*, 128 F.4th 979, 997 (8th Cir. 2025); *see also Custom Commc'ns, Inc. v. Fed. Trade Comm'n*, 242 F.4th 1060, 1075 (8th Cir. 2025) ("Given the breadth of the Rule's coverage, the party-specific vacatur requested by the Commission is not feasible. Accordingly, we grant the petitions for review and vacate the Rule."); *Union Pac. R.R. Co. v. Surface Transp. Bd.*, 113 F.4th 823, 839 (8th Cir. 2024) ("we hold that the Board lacks statutory authority …, grant the petitions for review, and vacate the final rule"); *United States ex rel. O'Keefe v. McDonnell Douglas Corp.*, 132 F.3d 1252, 1257 (8th Cir. 1998) ("An agency's promulgation of rules without valid statutory authority implicates core notions of the separation of powers, and we are required by Congress to set these regulations aside").

The United States therefore does not oppose Plaintiffs' requested vacatur.

## CONCLUSION

For the foregoing reasons, the United States withdraws its motion for summary judgment and its opposition to Plaintiffs' motion for summary judgment and to Plaintiffs' motion for

9

preliminary injunction (Doc. Nos. 18, 71, 72), and does not oppose Plaintiffs' request that the Court vacate the 2024 Rule.

                                            Respectfully submitted,

                                            ADAM R.F. GUSTAFSON
                                            Acting Assistant Attorney General

                                            ROBERT F. STANDER
                                            Deputy Assistant Attorney General

                                            */s/ Daniel R. Dertke*

*Of Counsel:*                                 DANIEL R. DERTKE
LAUREN MAHER                  United States Department of Justice
Environmental Protection Agency    Environment & Natural Resources Division
                                            Environmental Defense Section
                                            P.O. Box 7611
                                            Washington, DC 20044
                                            (202) 532-3155
                                            daniel.dertke@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 16, 2025, I filed the foregoing Notice of Withdrawal of Prior Filings using the Court's CM/ECF system, which will electronically serve all counsel of record registered to use the CM/ECF system.

          /s/ *Daniel R. Dertke*
         DANIEL R. DERTKE

         *Counsel for Defendants*